**UNITED STATES of America, Appellee,**

v.

**Arnold OKUN, Defendant–Appellant.**

**Docket No. 00–1716.**

United States Court of Appeals, Second Circuit.

June 20, 2001.

Patrick F. Broderick, Esq., Bayside, NY, for appellants.

Thomas A. Firestone, Assistant United States Attorney; Loretta E. Lynch, United States Attorney and Cecil C. Scott, Assistant United States Attorney, on the brief, Brooklyn, NY, for appellees.

Present WALKER, Chief Judge, KATZMANN, and CUDAHY,* Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED

---

* The Honorable Richard D. Cudahy of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendant-appellant Arnold Okun appeals from an October 20, 2000 judgment in the United States District Court for the Eastern District of New York, convicting him, upon his plea of guilty, of conspiring to commit insurance fraud in violation of 18 U.S.C. § 371 and structuring a financial transaction in violation of 31 U.S.C. § 5313(a). The district court sentenced Okun to two concurrent prison terms of 16 months, which Okun is currently serving, three years of supervised release, and a special assessment of $100. On appeal, Okun argues that (1) the district court erred in disqualifying his chosen attorney due to a conflict of interest, and (2) his waiver of appeal is invalid because he made the waiver with the assistance of competent, yet substitute, counsel.

The underlying conviction arose out of Okun's submission of a false insurance claim on behalf of Pisces Trading Company, of which Okun was president, relating to alleged damage to Pisces' warehouse due to a staged flood on May 2, 1992 ("Pisces scheme"). Okun participated in this scheme with United International Adjuster ("UIA"), which served as the public adjuster for Pisces' claim. Okun was arrested on February 7, 1997 and he retained Patrick F. Broderick to represent him in this criminal action.

By letters dated July 14, 28, and August 27, 1997, the government informed the district court, in relevant part, that (1) Broderick represented John Janeczko, a UIA employee involved in the fraudulent Pisces scheme, in an unrelated state criminal prosecution as well as an insurance fraud case in federal court to which Janeczko, at that time, was awaiting sentencing; (2) Janeczko, in his capacity as a UIA employee, was involved in the Pisces scheme; and

(3) a cooperating witness had informed the government that Janeczko knew that the Pisces claim was fraudulent.

On August 28, 1997, the district court conducted a hearing, pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to investigate Broderick's potential conflict of interest arising from his representation of both Janeczko and Okun.

■ At this hearing, Okun stated that (1) he wanted Broderick to represent him; (2) he had not solicited advice from independent counsel about Broderick's continued representation; and (3) he was unaware of the potential conflict of interest. Janeczko, who was also present at the *Curcio* hearing, indicated that he too wanted Broderick to represent him. At this point during the hearing, the court indicated that it was inclined to adjourn the case to allow Okun time to seek advice from independent counsel regarding Broderick's potential conflict of interest. The following colloquy then occurred:

COURT: You [Broderick] can't think of anything where there is a conflict [of interest due to your representation of both Okun and Janeczko]?

BRODERICK: Not in this case.

COURT: If [Janeczko] was involved in this claim to any degree and he is called as a witness, how are you going to cross examine him when you had confidential relations with him and can't release it? You don't think that is a conflict?

BRODERICK: That is definitely a conflict. But I can't see how Jack Janesko [sic] can be called as a witness.

\* \* \*

AUSA LIEB: I am sorry. How can he say he [Janeczko] was not involved in the claim? Attached to my letter to the court, I have a letter dated May

28, 1992 [related to the Pisces scheme] which is signed by Jack Janesko [sic], and Mr. Broderick tells me that is Mr. Janesko's [sic] signature.

\*    \*    \*

COURT: [Adressing Janeczko] Is this your signature?

JANECZKO: It was shown to me last time I was here. That is my signature, yes.

COURT: You are off the case as a conflict.... You [Okun] have to get yourself a new lawyer.

On September 4, 1997, Okun filed an interlocutory appeal challenging the district court's decision to disqualify Broderick. By order dated November 6, 1997, this court dismissed the appeal. On April 17, 1998, Okun retained David W. Clayton to represent him. After pleading guilty to the crimes charged, the district court sentenced Okun on October 12, 2000. At the plea hearing, the following colloquy occurred:

COURT: Are you satisfied with the legal representations you received [from Clayton] up to this point?

OKUN: Yes, your honor.

COURT: You're satisfied with your lawyer, that he's doing what's best for you?

OKUN: Yes.

This court shall reverse a district court's decision to disqualify counsel due to a conflict of interest only if we find that the district court abused its discretion. *See United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993).

■ The accused, although guaranteed the right to counsel by the Sixth Amendment, does not have the absolute right to counsel of his or her own choosing. *Id.* As the Supreme Court stated:

while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

In deciding whether to disqualify counsel, the district court "recognizes a presumption in favor of the accused's chosen counsel, although this presumption can be overcome by a showing of an actual conflict or potentially serious conflict." *Locascio,* 6 F.3d at 931. The Supreme Court held that a district court deserves "substantial latitude" even if the district court's determination to disqualify counsel is based on a potential conflict because

[u]nfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of expla-

nation to a criminal defendant untutored in the niceties of legal ethics.

Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Wheat,* 486 U.S. at 162–63.

■ We find that the district court did not abuse its discretion in disqualifying Broderick as Okun's chosen counsel because of a potential conflict of interest. The potential for a conflict of interest is apparent in view of the facts that (1) Janeczko admitted to the district court that he had signed, on UIA letterhead, a letter related to the Pisces scheme; (2) the government indicated that their confidential witness informed them that Janeczko knew that the Pisces claim was fraudulent, and (3) Broderick represented both Janeczko and Okun. As the district court noted, if, for example, the government called Janeczko as a witness in Okun's trial, Broderick's ability to cross-exam Janeczko effectively on behalf of Okun could be significantly compromised because of Broderick's simultaneous representation of Janeczko.

Because we find that the disqualification of Okun's chosen counsel was proper, Okun's remaining argument is moot.

For the foregoing reasons, the judgment of the district court is AFFIRMED.